**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| KATHI KRAFT, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:05-cv-169-SEB-VSS |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Kathi Kraft ("Kraft") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

**I. BACKGROUND**

Kraft applied for DIB on September 27, 2001, alleging an onset date of November 28, 1998. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on March 3, 2004. Kraft was present, accompanied by her attorney. Medical and other records were introduced into evidence. Kraft, two medical experts, and a vocational expert testified.

The ALJ denied Kraft's application on April 28, 2004. On September 7, 2004, the Appeals Council denied Kraft's request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over Kraft's complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Kraft met the disability insured status requirements of the Act through March 31, 2004; (2) Kraft had not engaged in substantial gainful activity at any time relevant to the ALJ's decision; (3) the medical evidence established that Kraft had "severe" impairments, consisting of degenerative disc disease, edema, carpal tunnel syndrome, migraine headaches, an adjustment disorder with depressed mood and some anxious features, and a personality disorder with hypochondriacal and histrionic features, but that her osteoarthritis, torn medial meniscus, double vision and allergies did not constitute "severe" impairments; (4) Kraft did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4; (5) Kraft retained the residual functional capacity ("RFC") to perform simple and repetitive medium exertional work; (6) Kraft's subjective complaints and allegations concerning the severity of her impairments were not reasonably consistent with the objective medical and other evidence of record; (7) Kraft was unable to perform her past relevant work as a bank teller; (8) Kraft was a younger individual and was now closely approaching advanced age, had a high school education; and no transferable skills; and (9) based on an exertional capacity for medium and unskilled work, and Kraft's age, education and work experience, Medical-Vocational Rules 203.22 and 203.29 directed a conclusion of "not disabled." With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Kraft had not been disabled within the meaning of the Act at any time relevant to the ALJ's decision.

## II.  DISCUSSION

### A.    Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ determined that although Kraft had several severe impairments, she had the RFC to perform simple and repetitive medium exertional work. Kraft argues that the ALJ's decision is not supported by substantial evidence.

Kraft argues that the ALJ did not adequately evaluate the evidence from the Mayo Clinic in November 1998 relating to her lower extremity swelling, edema. The ALJ, however, did discuss the Mayo Clinic records and other reports of lower extremity pain, weakness and edema. (R. at 17).  He concluded that no etiology had been found for those complaints and that Kraft had been advised to increase her exercise. *Id*.  The ALJ further noted that the pain and edema had been helped with the use of compression stockings and Neurontin. *Id.* He noted that physical examinations had been essentially normal, other than intermittent and diffuse tenderness of the lower extremities and very mild non-pitting edema of the left lower extremity.  *Id*.  As of December 2000, Kraft had full strength despite giveaway weakness. *Id*. The ALJ also found that there had been no neurological deficits on physical examinations, an electromyogram and nerve conduction study of the lower extremities were normal, and a carotid duplex evaluation was unremarkable. (R. at 18). In sum, the ALJ did not ignore evidence relating to Kraft's lower extremity complaints. He reviewed the appropriate evidence and his findings in relation to Kraft's complaints of lower extremity pain were supported by substantial evidence. The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

Kraft also argues that the ALJ erred in assessing her credibility.  She contends that her daily activities were not consistent with an ability to perform medium level work. Indeed, the ALJ acknowledged that if full credit were given to Kraft's subjective complaints, she would be considered disabled. (R. at 17).  Although Kraft disagrees with the ALJ's finding that Kraft's allegations concerning the severity of her impairments were not reasonably consistent with the objective medical and other evidence of record, she does not articulate in what ways the ALJ's credibility assessment was flawed. The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001).  The ALJ discussed the fact that the MRI of the thoracic spine was normal and that no etiology had been found for her alleged edema. (R. at 17). Kraft had a normal electromyogram and nerve conduction study of the lower extremities, and the MRI

of the cervical spine showed only mild degenerative changes with no evidence of stenosis. (R. at 18). He noted that Kraft had been instructed to begin aerobic exercise, which would be totally incompatible with her allegations. (R. at 17). The ALJ noted that Kraft reported having frequent migraine headaches from 1999 through August 2002, but that there was only one recorded trip to the emergency room and her headaches were reported to be eliminated with medication in June 2000. (R. at 18). The ALJ found that her allegations of poor memory were not borne out by testing, and all other psychological testing appeared to be within normal limits. (R. at 19). The ALJ noted that the record reflected Kraft's tendency to convert psychological stress into physical symptomatology. *Id.* The ALJ's assessment of Kraft's credibility is not patently wrong.

Kraft also argues that the ALJ erred in using the "grids" in determining Kraft's eligibility for benefits.  In this case, the ALJ consulted a vocational expert ("VE") only in relation to evaluating Kraft's past work as a bank teller. (R. at 435). The ALJ applied the "grid" to determine that Kraft was not disabled.  (R. at 20). Kraft argues that this was error because the ALJ determined that she had nonexertional impairments. Nonexertional limitations include pain; difficulty functioning because of nervousness, anxiety, or depression; difficulty maintaining attention or concentration; difficulty understanding or remembering detailed instructions; visual or hearing difficulty; environmental restrictions; and certain manipulative or postural functions such as reaching, handling, stooping, climbing, crawling, or crouching. *See* 20 C.F.R. § 404.1569a(c); 20 C.F.R. Pt. 404, Subpt. P., App. 2, 200.00(e). "Use of the grid may indeed be inappropriate if a claimant's non-exertional impairments are so severe as to limit the range of work he or she can perform." *Allen v. Sullivan,* 977 F.2d 385, 389 (7th Cir. 1992).  "[W]here a nonexertional limitation might substantially reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). *See also Herron v. Shalala*, 19 F.3d 329, 336-37 (7th Cir. 1994) (the use of the grid is inappropriate where the claimant's nonexertional impairments are so severe as to limit the range of work she can perform, in which case a determination of disability is made through the testimony of vocational experts who can indicate what work a claimant is capable of performing.).

Kraft argues that at least three of the ALJ's findings required the ALJ to obtain VE testimony at step five of the analysis.  Those findings are as follows: the finding that Kraft had "severe" mental impairments, including an adjustment disorder with depressed mood and some anxious features, and a personality disorder with hypochondriacal and histrionic features; the finding that Kraft suffered moderate difficulties in concentration, persistence or pace; and the finding that Kraft would be limited to "repetitive" unskilled work.

The Commissioner argues that the ALJ accommodated Kraft's concentration deficits by finding her capable of performing simple and repetitive unskilled work. The Commissioner contends that "repetitive" is merely a reiteration of "simple." This misses the point as far as the VE testimony is concerned. Furthermore, the Commissioner cites to no authority for the proposition that "repetitive" essentially means the same as "simple." Kraft acknowledges that by definition "unskilled" work is "simple" work. *See* 20 C.F.R. §

4

404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."). The same can not necessarily be said of "repetitive" work.

The Commissioner also points out that the ALJ noted that Kraft had suffered no loss in cognitive abilities from either her head injury or depression. (R. at 20). It is not clear, however, whether "cognitive abilities" encompasses the ability to concentrate. If it does, then the ALJ's finding that Kraft suffered no loss in cognitive abilities is inconsistent with his notation that her adjustment and personality disorders caused moderate deficiencies in concentration, persistence or pace. (R. at 16).

The ALJ found that Kraft suffered from severe nonexertional impairments and experienced some moderate deficiencies as a result of those impairments, leaving her able to perform only simple and repetitive medium exertional work. Under these circumstances, the ALJ's reliance on the grid and his finding at step five is not supported by substantial evidence. On remand, in determining Kraft's RFC, the ALJ shall evaluate the impact of all of her exertional and nonexertional impairments. At step five, the ALJ shall include those limitations which are supported by substantial evidence in a hypothetical question posed to a VE to determine to what extent any range of work may be restricted.

### III. CONCLUSION

For the reasons described, the ALJ's decision is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 05/17/2006

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana